OPINION AND JUDGMENT ENTRY
This is an administrative appeal from a judgment of the Lucas County Court of Common Pleas which granted appellees' motion for summary judgment, thereby denying appellant's claim for worker's compensation death benefits due to the death of her husband, Joseph Orlando. For the reasons that follow, we affirm the judgment of the trial court.
On appeal appellant, Bonita J. Orlando, sets forth the following three assignments of error:
 "1. The Trial Court erred in granting summary judgment despite the existence of material facts that Appellant's decedent experienced `unusual' work-related stress as is required by Ryan v. Connor (1986), 28 Ohio St.3d 406, and in denying workers' compensation death benefits to decedent's surviving spouse.
 "2. It was error for the Trial Court to weigh the evidence on summary judgment.
 "3. The Trial Court erred when it misapplied the first part of the two-part test in Ryan v. Connor and compared the Appellant's decedent's work-related stress with that of the workforce of the employer, rather than with that of the general public workforce population as required by Ryan v. Connor and Small v. Defiance Public Library."
The decedent in this case, Joseph Orlando, began working at General Motors in 1968. In May 1991, Orlando was transferred to General Motors' Toledo Powertrain Plant ("Powertrain"). On August 7, 1995, after completing his shift at Powertrain, Orlando made the one-hour commute to his home in Dearborn Heights, Michigan. Later that evening, he began experiencing chest pain, and shortly thereafter, he died. An autopsy later showed that Orlando died from an acute myocardial infarction, caused by atherosclerotic cardiovascular disease.
After Orlando's death, appellant filed an application for workers' compensation death benefits in which she asserted that Orlando's death was caused by the "stress and strain of forced overtime, 6 days a week, 9 1/2 hours a day, ***." The claim was denied at every administrative level. On March 26, 1998, appellant filed an appeal to the Lucas County Court of Common Pleas.
On November 13, 1998, appellee, Powertrain, filed a motion for summary judgment and a memorandum in support thereof, in which it argued that appellant was not entitled to death benefits because Orlando's death was not caused by his work at Powertrain. In support thereof, appellee argued that any stress which may have been experienced by Orlando was not "unusual" when compared to stress encountered by either the general workforce or the approximately four thousand workers employed by Powertrain at the time of Orlando's death.
On December 10, 1998, appellant filed a memorandum in opposition to summary judgment, in which she asserted that Orlando's fatal heart attack was brought on by extreme stress and the "frustration and emotional strain" of working "a substantial amount of forced overtime" over the course of several years. Attached to appellant's memorandum were copies of Orlando's statements of wages and earnings for 1994 and 1995. In an attached affidavit appellant's attorney stated that he had calculated, based on a base pay rate of $17.93 per hour, that Orlando worked 930.69 hours of overtime in 1994 and 781.71 hours of overtime in 1995.
In her attached affidavit, appellant stated that Orlando was forced to work "mandatory overtime" at Powertrain, and was not allowed to take his "earned vacation." Appellant stated in her attached deposition that her husband did not seek medical treatment even though he suffered from "self-diagnosed" indigestion for at least a year before his death. Appellant further stated that Orlando had no stress in his life other than his work and, in the year before his death, he did not generally look like he was under stress. Appellant stated that Orlando liked his job; however, after transferring to Powertrain, he often complained that he was tired. She also stated that Orlando was not even allowed to take a day off work to see his son graduate from high school because he was "low man in seniority."
Also attached to appellant's memorandum were a letter and a report written by Earl S. Perrigo, M.D., a cardiologist, who stated, after reviewing Orlando's autopsy report, that Orlando suffered from arteriosclerotic coronary artery disease and hypertensive heart disease. Perrigo further stated that, at the time of his death, Orlando almost certainly had high blood pressure, and he experienced at least one other heart attack prior to his fatal attack on August 7, 1995. After interviewing appellant, Perrigo concluded that the stress of working overtime "clearly contributed" to Orlando's heart disease and was therefore the "primary cause" of his death.
On November 13, 1998, appellee filed authenticated copies of relevant portions of the record of administrative proceedings, including the "First Report of Injury, Occupational Disease or Death" filed by appellant, in which she claimed that Orlando died because of the stress of working overtime. The administrative record also included a summary of Orlando's attendance record at Powertrain which showed that Orlando took a total of ninety-six days off work in 1994 and fifty-four days off work in 1995.
Appellee also filed the affidavit of Les Zaborowski, appellee's manager of labor relations, in which Zaborowski stated that "Orlando actually worked less overtime than many other employees in his same department and he could have taken any vacation time off he was entitled to." Zaborowski further stated in his affidavit that Orlando's overtime hours in 1994 and 1995 "were not substantially different than most other hourly employees at the Powertrain Division ***."
On January 15, 1999, the trial court filed a judgment entry in which it found that appellant had not established that Orlando suffered a heart attack as a result of stress that was greater than that suffered by either all workers in the general work force or the Powertrain work force in particular. Accordingly, the court granted summary judgment to appellee. On February 17, 1999, a timely notice of appeal was filed.
Appellant's three assignments of error will be considered together, since she asserts in all three that the trial court erred by granting appellees' motion for summary judgment.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). If a party opposing a motion for summary judgment can show through affidavits, depositions, or otherwise that he has presented a genuine issue of material fact about which reasonable minds could differ, that party is entitled to have the motion for summary judgment denied. Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, paragraph three of the syllabus, as limited by Dresher v. Burt (1996), 75 Ohio St.3d 280, 295.
In order to establish entitlement to worker's compensation benefits for a stress-related injury, an injured worker must show that the stress he or she was subjected to was greater than that to which all workers are occasionally subjected.Ryan v. Connor (1986), 28 Ohio St.3d 406, 409. "In objectively considering whether work-related stress is compensable, it is necessary to view the stress experienced by the injured employee in comparison to the stress encountered by every member of the work force," rather than simply considering the decedent's individual response to the stress. Small v. Defiance PublicLibrary (1993), 85 Ohio App.3d 583, 587.
In addition to the above, the injured worker must establish a causal connection between the stress and the injury.Ryan, supra, at 409-410. More specifically, where death benefits are sought, the claimant must show by a preponderance of the evidence that the decedent's death was "`accelerated by a substantial period of time as a direct and proximate result of the *** stress.'" Id. at 410, quoting McKee v. Electric Auto-Lite Co.
(1958), 168 Ohio St. 77, at the syllabus.
In this case appellee Powertrain, as the moving party, bears the initial burden of demonstrating that there were no genuine issues of material fact. Appellee asserts on appeal that it is entitled to summary judgment because appellant did not meet her burden under Ryan, supra. Specifically, appellee argues that Orlando did not suffer from any "unusual" stress due to his employment at Powertrain.
In response appellant, as the nonmoving party, is required to set forth specific facts which are based on personal knowledge and would be admissible in evidence. See Civ.R. 56(E);Tomlinson v. Cincinnati (1983), 4 Ohio St.3d 66. Inadmissible statements, such as hearsay or speculation, which are inserted into an opposing affidavit, cannot be considered by the trial court or this court. State, ex rel. Martinelli v. Corrigan
(1991), 71 Ohio App.3d 243, 248. If appellant's opposing affidavits, disregarding any inadmissible statements, do not create a genuine issue of material fact, then this court may grant summary judgment to appellee, if appellee is otherwise entitled to judgment. Pond v. Carey Corp. (1986), 34 Ohio App.3d 109, 111;Penwell v. Taft Broadcasting Co. (1984), 13 Ohio App.3d 382.
A review of the record demonstrates that appellant's assertions as to Orlando's loss of seniority, his inability to take vacation and the requirement that he work "mandatory" overtime were based on her own affidavit and deposition testimony. However, without proper documentation, such statements are hearsay and therefore are inadmissible under Civ.R. 56(E). The record contains no such documentation. We also note that appellant's assertion in her appellate brief that Orlando frequently "voiced his frustration and exasperation at his inability to use his vacation time" is not supported by the cited portions of her deposition testimony.[1]
The record further shows that Perrigo's conclusions that the stress of working overtime "clearly contributed" to Orlando's heart disease and "significantly hastened" his death were based on appellant's hearsay statements as set forth above. In addition, counsel's calculations that Orlando worked 930.69 hours of overtime in 1994 and 781.71 hours of overtime in 1995 are based only on Orlando's statements of wages and earnings for 1994 and 1995. Although counsel states in this affidavit that he applied a flat pay rate of $17.93 per hour for both tax years, the record contains no documentation of Orlando's pay history over the four years he worked at Powertrain, including his hourly rate of pay for each year and any pay raises, shift premiums, or additional pay he may have received for weekends and holidays. Accordingly, Perrigo's conclusions regarding the effects of work-related stress on Orlando and the overtime calculations set forth in counsel's affidavit are inadmissible for purposes of summary judgment.
In contrast, appellee put forth Zaborowski's affidavit, which contains statements that are based on Zaborowski's personal knowledge as Powertrain's labor relations manager and are supported by authenticated copies of Powertrain's business records.
A review of the admissible evidence presented by appellant shows that Orlando was transferred to the Powertrain plant in 1991, that he worked more than forty hours per week, and he lived at least one hour from his workplace. The evidence also shows that Orlando had heart disease at the time of his death on August 7, 1995, and that he had not seen a doctor despite feeling fatigue and pain for over a year because he had self-diagnosed his physical discomfort as indigestion. However, the record contains no admissible evidence that the stress allegedly experienced by Orlando, when viewed objectively, was any greater than the stress which all workers, including those at Powertrain, occasionally experience.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that the record does not contain sufficient, admissible evidence to meet the first prong of the Ryan test. Further, because the first prong of the Ryan test was not met, we need not determine whether Orlando's death was accelerated as a direct and proximate result of any work-related stress he may have experienced. Accordingly, there remains no genuine issue of material fact and, even when construing the evidence that was properly before the trial court most strongly in favor appellant as the non-moving party, reasonable minds can only conclude that appellees are entitled to summary judgment as a matter of law.
Appellant's three assignments of error are not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] In contrast to the representations made in her appellate brief, appellant stated on page fifty of her deposition that she knew Orlando experienced stress because of "the hours that he had to stand at the job and he was being tired."